UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                                                              :
  ALTY ADAMSON,                                               :
                                                              :
                                       Petitioner,    :                16-CV-0511 (JPO)
                                                              :
                       -v-                            :                OPINION AND ORDER
                                                              :
  THOMAS GRIFFIN,                                             :
                                       Defendant.    :
-------------------------------------------------------------X

J. PAUL OETKEN, District Judge:

    *Pro se* petitioner Alty Adamson filed a petition for a writ of habeas corpus pursuant to 28

U.S.C § 2254, seeking review of his jury conviction in the Supreme Court of New York, New

York County on counts of assault in the second and third degrees, petit larceny, and criminal

possession of stolen property in the fifth degree.  (Dkt. No. 1 ("Petition").)  On May 16, 2016,

the Attorney General of the State of New York filed an answer in opposition to the Petition.  For

the reasons that follow, the Petition is denied.

I.      **Background**

        A.      **The Crimes and Trial**

        On July 20, 2009, Petitioner Alty Adamson was indicted on charges associated with a

July 13, 2009 theft at a Filene's Basement store in New York County, and an ensuing altercation

between Adamson and store employees.

        According to testimony at trial (and corroborated by surveillance video), Adamson placed

in a black bag four perfume bottles that were for sale and put a fifth in his pocket.  (Trial

Transcript ("TT") at 32-35, 45-46.)  Adamson took the bottles into the bathroom and then left the

store without paying for them.  (*Id.* at 49-50, 74, 112-13.)

Several store employees, alerted that a potential shoplifting had occurred, brought Adamson back into the store to the loss prevention office, where the perfume bottles were recovered and photographed.  (*Id.* at 50-51, 74-75, 87-88; 113.)  According to three Filene's Basement employees who witnessed the event and were called to testify at trial, Adamson then lifted a forty-pound bench and struck James French, the shoplifting prevention manager, in the head with it.  (*Id.* at 83-84, 88, 100, 104-107, 114-15, 122, 124, 136-38, 143.)  A "melee" between employees and Adamson ensued.  (*Id.* at 40, 58, 84, 116, 124, 138-39, 149, 151.)  After about ten minutes, Adamson was subdued and handcuffed.  (*Id.* at 84-85, 124, 149.)

According to the testimony of French and an arresting officer, Adamson sustained head injuries and was bleeding (*id.* at 93, 108, 168, 172), though store detective Raphae Fei testified that she "d[id]n't think" Adamson was hurt and didn't "recall" him bleeding.  (*Id.* at 126-27.)  Adamson received medical treatment at the emergency room.  (*Id.* at 93.)  French meanwhile had "a lot" of blood coming from his forehead; it was "everywhere, all over his shirt, his face," and on the floor.  (*Id.* at 41, 84, 119, 167.)  French's emergency room records—introduced as a trial exhibit—characterized the two-centimeter wound on French's head as "minor," without any accompanying pain. (Dkt. No. 11 ("SR") at 161-67.)  French testified that he was "injured," but "didn't feel any pain maybe because [his] Adrenaline was going."  (TT at 84, 89.)  French ultimately got staples to close the wound and still had a scar on his scalp several months later. (*Id.* at 84, 89, 90-91; SR at 9-10, 32-33.)

A shoplifting detective at Filene's Basement, Gauntlet Williams, who checked the bathroom for the missing perfume bottles, carried Adamson's bag into the loss prevention office, and helped to subdue Adamson, did not testify at trial because he was in Jamaica.  (TT at 40, 48-49, 57-58, 75, 107, 143, 145, 160, 206.)  No direct testimony or statement from Williams was introduced, but defense counsel elicited from another store detective, Michael Paul, that

Williams had said he did not find any fragrance bottles in the bathroom after Adamson left.  (*Id.* at 48-49.)  Defense counsel requested a missing witness charge regarding Williams, which the trial court declined to give.  (*Id.* at 161, 205.)  Defense counsel did, however, reference Williams's absence during his summation.  (*Id.* at 206, 216-17.)

Adamson did not testify at trial, nor did defense counsel call any witnesses.  (*Id.* at 201.)

Upon conclusion of testimony, defense counsel moved the court to dismiss the count of assault in the second degree with respect to French, claiming that the People had not made out the physical injury element of second-degree assault.  (*Id.* at 201-202).  The defense also moved to dismiss all other counts for failure to make out a *prima facie* showing of the elements of the crimes charged; the motions to dismiss were denied.  (*Id.* at 201-04.)

On Friday, November 5, 2010, the jury retired to deliberate.  At 4:06 p.m. that day, the jury sent a note requesting a read-back of testimony.  (*Id.* at 258, 266.)  The prosecution and defense counsel agreed on the portion of the transcript to be read back.  (*Id.* at 258.)  When the jury entered the courtroom at 4:46 p.m., Justice Kirke Bartley, Jr. acknowledged receipt of the jury's request for testimony and informed the jury that deliberations had to conclude at 5:00 p.m. that day because of one juror's childcare obligations, so the read-back would be delayed until deliberations reconvened (on Monday).  (*Id.* at 259, 264.)  The judge then asked the jury to write a note indicating whether a verdict had been reached on any of the counts.  (*Id.* at 259.)  Neither party objected to this direction.  The jury left the courtroom and, at 4:50 p.m., sent a note that it had reached a verdict on two counts and was still discussing the two remaining counts; in open court, the jury then declared Adamson guilty of the two counts of assault.  (*Id.* at 259, 260-63.)  The following Monday, the jury announced a verdict of guilty on the remaining two counts (petit larceny and criminal possession of stolen property in the fifth degree).  (*Id.* at 267-68.)

Adamson was sentenced to five years' incarceration with five years of post-release supervision.  (Dkt. No. 12-2 at 5, 7.)

**B.      § 330.30 Motion to Set Aside the Verdict**

On December 20, 2010, Adamson moved *pro se*, in a brief later supplemented by an attorney's affirmations, to set aside the verdict pursuant to Criminal Procedure Law § 330.30[1] on the grounds that: (1) the evidence and testimony presented at trial were legally insufficient to establish the physical injury element of assault in the second and third degree; (2) trial counsel was ineffective; (3) trial counsel prevented Adamson from testifying and waiving a jury trial; (4) the prosecution failed to turn over *Brady* and *Rosario* material by failing to provide the defense with photos of Adamson and French taken by police until after trial, and by disclosing a copy of French's medical records only after his testimony had concluded; and (5) the prosecution solicited perjured testimony.  (SR at 25-32, 153-59, 175-79.)

In denying the § 330.30 motion, the Supreme Court of New York, New York County determined that there was legally sufficient evidence to establish guilt because French's medical records and his testimony, as well as a photo of a permanent scar, established French's physical injury.  (SR at 9-11.)  The court also found that a failure to produce Adamson's arrest photo in a timely manner did not constitute a violation of *Brady v. Maryland*, 373 U.S. 83 (1963) (requiring prosecutors to disclose materially exculpatory evidence in the government's possession to the defense), because the facial injuries depicted did not cast significant doubt on testimony, and, in

---

[1]      N.Y. C.P.L. § 330.30 provides for setting aside a verdict if (1) any ground appears in the record that would require reversal of the verdict on appeal; (2) there was misconduct by a juror that may have affected a substantial right of the defendant; or (3) new evidence has come to light post-verdict which, had it been available at trial, would have created a probability of a more favorable verdict to the defendant.

fact, supported testimony describing a struggle to forcibly restrain Adamson.  (SR at 11-12.)  The court found the ineffective assistance of counsel claim to be without merit.  (SR at 10-11.)

Further, the New York Supreme Court held that the alleged nondisclosure of French's medical records (the prosecution contended that the records were turned over in advance of trial), as well the allegations of perjured testimony, preventing Adamson from testifying, and waiving a trial by jury, were not statutorily cognizable issues on a § 330.30 motion.  (SR at 11, 12.)

**C.**    **§ 440.10 Motion to Vacate the Verdict**

On March 27, 2012, Adamson moved the New York Supreme Court, New York County to vacate the judgment of conviction pursuant to C.P.L. § 440.10,[2] again claiming that trial counsel had been ineffective because he had not permitted Adamson to testify, failed to call any witnesses, neglected to conduct a proper investigation, did not obtain defendant's arrest photograph prior to trial, and collaborated with the prosecution.  (SR at 77-93.)  On October 25, 2012, the New York Supreme Court denied the motion to vacate the judgment, finding that Adamson's ineffective assistance of counsel allegations lacked merit.  (SR at 71-75.)  The Appellate Division and the New York State Court of Appeals did not permit appeal of the order denying Adamson's § 440.10 motion.  (SR at 57-67, 247, 248-53.)

**D.**    **The Direct Appeal**

On direct appeal to the Appellate Division of the judgment of conviction, defense counsel argued that: (1) the trial court had committed a mode of proceedings error when it responded to a jury note by inquiring, without prior notice to defense counsel, whether the jury had reached a partial verdict; and (2) the People had not proven the physical injury element of assault in the

---

[2]    N.Y. C.P.L. § 440.10 provides, in relevant part, for vacating a judgment if it was procured in violation of a state or federal constitutional right or if there was improper conduct not appearing in the record which, if it had appeared on the record, would require reversal of the judgment on appeal.

second degree.  (SR at 254-87.)  In a supplemental *pro se* brief, Adamson argued that (1) the evidence was insufficient to make out assault in the second degree; (2) the trial court abused its discretion by refusing to give a missing witness charge regarding store employee Gauntlet Williams; (3) Williams's failure to testify at trial denied Adamson his right to confrontation; (4) the prosecutor violated *Rosario* and *Brady* obligations by failing to produce Adamson's arrest photograph and French's medical records in a timely manner; and (5) trial counsel was ineffective.  (SR at 291-326.)

The Appellate Division, First Department unanimously affirmed the conviction, rejecting Adamson's challenges to the sufficiency and weight of evidence supporting the element of physical injury for assault in the second degree.  *People v. Adamson*, 127 A.D.3d 566, 566 (N.Y. App. Div. 1st Dep't 2015).  The Appellate Division reasoned that being struck "in the head with a 40-pound bench, resulting in a one-inch gash that bled extensively and required four staples to close . . . would normally be expected to bring with more than a little pain."  *Id.*  (citing *People v. Chiddick*, 8 N.Y.3d 445, 447 (2007)).  The Appellate Division further held that the trial court properly exercised its discretion when it asked the jury whether it had reached a partial verdict, and that, in any case, the issue was not preserved.  The Appellate Division rejected the remainder of Adamson's claims.  The New York Court of Appeals denied leave to appeal. *People v. Adamson*, 25 N.Y.3d 1197, *recons. denied*, 27 N.Y.3d 1006 (2015).

### E.    The Habeas Petition

On January 15, 2016, Adamson submitted a petition for a writ of habeas corpus to this Court.  His petition states the following bases for relief: (1) the evidence at trial was legally insufficient to establish the physical injury element of second degree assault; (2) the trial court, without advance notice to defense counsel, committed a mode of proceedings error in asking the jury if it had reached a partial verdict after responding to a jury note; (3) the evidence at trial was

legally insufficient to establish petit larceny and possession of stolen property in the fifth degree;
(4) prosecutors violated *Brady* and *Rosario* obligations by not producing Adamson's arrest
photograph until after trial and not providing French's medical records until his testimony had
concluded; (5) the trial court abused its discretion by refusing to give the jury a missing witness
charge regarding store employee Gauntlet Williams; (6) Williams's failure to testify at trial
denied Adamson his right to confrontation; and (7) trial counsel was constitutionally ineffective.
(Dkt. No. 1.)

## II.     Legal Standards

### A.      Exhaustion

A federal court may not consider a habeas corpus petition unless the petitioner has
exhausted all state judicial remedies.  *See* 28 U.S.C. § 2254(b)(1)(A); *Picard v. Connor,* 404
U.S. 270, 275 (1971).  A state remedy has been exhausted when a petitioner has presented the
federal constitutional claim asserted in the petition to the highest state court and thus adequately
informed the court of both the legal and factual bases for the federal claim.  *Picard*, 404 U.S. at
275–77; *Daye v. Attorney Gen. of State of N.Y.,* 696 F.2d 186, 191–92 (2d Cir.1982) (*en banc*).

To satisfy the exhaustion requirement, a petitioner may alert the state court to a claim's
federal constitutional nature in one of four ways: "(a) reliance on pertinent federal cases
employing [federal] constitutional analysis; (b) reliance on state cases employing [federal]
constitutional analysis in like fact situations; (c) assertion of the claim in terms so particular as to
call to mind a specific right protected by the Constitution; and (d) allegation of a pattern of facts
that is well within the mainstream of constitutional litigation."  *Smith v. Duncan*, 411 F.3d 340,
348 (2d Cir. 2005) (citing *Daye*, 696 F.2d at 194).

"[W]hen a Petitioner fails to raise his federal claims in compliance with relevant state
procedural rules, the state court's refusal to adjudicate the claim ordinarily qualifies as an

independent and adequate state ground for denying federal review." *Cone v. Bell*, 556 U.S. 449,

465.  However, a "state law ground is only adequate to support the judgment and foreclose

review of a federal claim if it is 'firmly established and regularly followed' in the state, and

application of the rule would not be 'exorbitant.'" *Bierenbaum v. Graham*, 607 F.3d 36, 47 (2d

Cir. 2010).  A state court's finding of state procedural default "will bar federal habeas review of

the federal claim, unless the habeas petitioner can show 'cause' for the default and 'prejudice

attributable thereto,' or demonstrate that failure to consider the federal claim will result in a

'fundamental miscarriage of justice.'" *Harris v. Reed*, 489 U.S. 255, 262 (1989) (citations

omitted).  A finding of ineffective assistance of counsel may constitute "cause" excusing

procedural default. *Tavarez v. Larkin*, 814 F.3d 644, 650 (2d Cir. 2016).

### B.    Habeas Corpus

For a federal district court to grant a writ of habeas corpus, the petition must satisfy a

"difficult to meet . . . and highly deferential standard for evaluating state-court rulings, which

demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster,* 131

S.Ct. 1388, 1398 (2011) (citations omitted) (internal quotation marks omitted).  The

Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides that a federal

district court may grant "a writ of habeas corpus on behalf of a person in custody pursuant to the

judgment of a State court . . . with respect to any claim that was adjudicated on the merits in

State court" if (1) the adjudication of that claim "resulted in a decision that was contrary to, or

involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court"; or (2) the adjudication "resulted in a decision that was based on an

unreasonable determination of the facts in light of the evidence presented in the State court

proceeding."  28 U.S.C. § 2254(d).  Under most circumstances, "a federal habeas court may not

reach the merits if the state court's rejection of a federal claim 'rests on a state law ground that is

independent of the federal question and adequate to support the judgment.'" *Clark v. Perez*, 510 F.3d 382, 390 (2d Cir. 2008) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)). "This rule applies whether the state law ground is substantive or procedural." *Coleman*, 501 U.S. at 729.

Under the AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct. The [Petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also Parsad v. Greiner,* 337 F.3d 175, 181 (2d Cir. 2003) ("The presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility.").

## III.   Discussion

The Court addresses each of Adamson's claims in turn.

### A.      Partial Verdict Inquiry

Respondent argues that Adamson's claim that the trial judge improperly asked the jury whether it had reached a partial verdict is procedurally barred.

This Court may not reach the merits of a federal claim if the state court has expressly relied on a procedural default as an independent and adequate state ground for rejecting the claim, *Clark v. Perez*, 510 F.3d at 390, unless the habeas petitioner can show cause for the default and prejudice or demonstrate a fundamental miscarriage of justice. *Harris v. Reed*, 489 U.S. at 262.

Here, the Appellate Division rejected Adamson's partial verdict inquiry claim on independent and adequate state procedural grounds. *Adamson*, 127 A.D.3d at 566. Specifically, the Appellate Division found that the issue was not preserved at trial as there was no specific and timely objection, as required by N.Y. C.P.L. § 470.05. *Adamson*, 127 A.D.3d at 566.

Because the state court decided the partial verdict inquiry claim on state law grounds, the issue is procedurally barred here.  Adamson has not overcome this procedural bar by showing cause and prejudice for his default or that failure to consider his claim regarding the partial verdict inquiry would result in a fundamental miscarriage of justice.

Even if this claim were not procedurally barred, it would fail on the merits.  Under New York law, when a trial court receives a request from the jury, a trial court must give notice to the prosecution and defendant before responding to the inquiry.  N.Y. C.P.L. § 310.30.  And a judge may accept a partial verdict when the jury has reached a decision on some but not all of the charges; no consultation with prosecution or defense counsel is required.  *Id.* § 310.70.  Here, the trial judge responded to a jury note after consultation with prosecution and defense counsel.  (TT at 258-59.)  Only after responding to the note did the judge proceed to ask whether a verdict had been reached on any of the counts, and the jury returned a guilty verdict on two counts.  (*Id.* at 259-62.)  Thus, the judge complied with New York law in making this inquiry.

Moreover, compliance with the relevant New York procedural law here did not run counter to established U.S. Supreme Court law. The only U.S. Supreme Court case Adamson cited regarding partial verdicts in his brief to the Appellate Division (Dkt. No. 1 at 40) was *Patterson v. New York*, 432 U.S. 197 (1977), which notes that state procedures can be proscribed under the Due Process Clause if they "offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental."  *Id.* at 199.  However, there is nothing in *Patterson* or elsewhere in U.S. Supreme Court case law that specifically suggests that such an inquiry regarding a partial verdict offends any fundamental principle of justice.

Because the trial judge's partial verdict inquiry did not run counter to established federal law as determined by the U.S. Supreme Court, even if Adamson's claim regarding the partial verdict inquiry were not procedurally barred, no habeas relief would be appropriate.

10

### B.    Missing Witness Charge

Adamson also claims that he was denied a fair trial because the trial court failed to give the jury a "missing witness" instruction for Gauntlet Williams, the Filene's Basement employee who checked the bathroom for missing perfume bottles after Adamson exited the bathroom who was apparently in Jamaica during the trial.

Respondent contends that this issue is procedurally barred because on direct appeal Adamson relied solely on state, and not federal, law for this claim.  But the Court is mindful of its obligation to construe liberally papers filed *pro se.  Jennis v. Rood,* 310 F. App'x 439, 441 (2d Cir. 2009).  The Second Circuit has noted that even "a minimal reference to the Fourteenth Amendment satisfies the exhaustion requirement."  *Reid v. Senkowski*, 961 F.2d 374, 376 (2d Cir. 1992).  The "right to a fair trial" is guaranteed by the Fourteenth Amendment, *Holbrook v. Flynn*, 475 US 560, 567 (1986), and this District has previously ruled on the merits of a habeas claim where the state court was only alerted to the federal nature of the claim by general reference in the brief to a Petitioner having been "deprived of a fair trial."  *Grady v. Conway*, No. 11-CV-7277, 2015 WL 2330022 at *10 (S.D.N.Y. May 11, 2015).  Under a less exacting reading due to a *pro se* Petitioner, Adamson's statement that he was "depriv[ed]" of a "fair trial" (Dkt No. 1-1 at 17, 31) provided "minimal reference to the Fourteenth Amendment," and thus sufficiently alerted the state court to the federal constitutional right potentially implicated by his missing witness charge.  The Court thus concludes that Adamson's missing witness charge claim was exhausted and is therefore not procedurally barred here.

Nevertheless, Adamson's missing witness charge claim fails on the merits.  There is "no clearly established Supreme Court precedent requiring a trial court to instruct the jury with respect to a missing witness."  *Morales v. Strack*, No. 03 Misc. 0066, 2003 WL 21816963 at *4 (E.D.N.Y. July 3, 2003), *aff'd*, 116 F. App'x 293 (2d Cir. 2004).  Instead, the decision of

whether to give a missing witness charge is committed to the sound discretion of the trial court.

*Reid*, 961 F.2d at 377.  Failure to deliver a missing witness charge cannot serve as the basis for

habeas relief unless a petitioner "establish[es] not merely that the instruction is undesirable,

erroneous, or even universally condemned," but also that it violated some right that was

guaranteed by the Constitution, such that the "instruction itself so infected the entire trial that the

resulting conviction violates due process."  *Cupp v. Noughten*, 414 U.S. 141, 146-47 (1973).  As

a result, "decisions in this area will rarely support reversal or habeas relief . . . ."  *Malik v.*

*Kelly*, 97-CIV-4543, 1999 WL 390604, at \*7 (E.D.N.Y. Apr. 6, 1999) (citing *United States v.*

*Torres*, 845 F.2d 1165, 1171 (2d Cir.1988).

Under New York law, to warrant a missing witness charge, the moving party must show

that: (1) the witness is knowledgeable about a material issue in the case; (2) the witness would be

expected to give noncumulative testimony favorable to the party who has not called him; and (3)

the witness is in the "control" of, or available to, the party.  *People v. Gonzales*, 68 N.Y.2d 424,

427 (1986).

Here, the trial court's decision not to give a missing witness charge was not erroneous, let

alone so erroneous that it so infected the trial that the conviction violated due process.  Adamson

has not established that Williams's testimony would have been anything but cumulative as to

Adamson's assaultive behavior; further, testimony from Williams about checking the bathroom

or carrying Adamson's bag would not have addressed a material aspect of the charge in the

indictment, since the stolen fragrance bottles were later recovered from Adamson.  The trial

judge, better positioned than a reviewing court to assess the issue, was well within his discretion

in deciding not to give a missing witness instruction.  Reversal is particularly inappropriate

where, as here, defense counsel urged an adverse inference in his summation.  *See Torres*, 845

F.2d at 1170.  As the lack of a missing witness instruction here was not erroneous and did not

deprive Adamson of his due process rights, habeas relief is not warranted on this ground.

### C.    Sufficiency of Evidence

Adamson challenges the sufficiency of the evidence supporting the jury's finding of guilt

on the charges of assault in the second degree, petit larceny, and possession of stolen property in

the fifth degree.

A reviewing court must conclude that "evidence is sufficient to support a conviction so

long as 'after viewing the evidence in the light most favorable to the prosecution, *any* rational

trier of fact could have found the essential elements on the crime beyond a reasonable doubt.'"

*Cavazos v. Smith*, 132 S. Ct. 2, 6 (2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

"[A] federal habeas corpus court faced with a record of historical facts that supports conflicting

inferences must presume—even if it does not affirmatively appear in the record—that the trier of

fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."

*Jackson*, 443 U.S. at 326.  A defendant challenging the sufficiency of evidence thus bears a

"very heavy burden."  *Ponnapula v. Spitzer*, 297 F.3d 172, 179 (2d Cir. 2002).

When considering the sufficiency of the evidence of a state conviction, a reviewing court

must first determine the elements of the underlying crime based on state law. *Id.* at 179.  The

Court considers each of Adamson's arguments on the sufficiency of the evidence presented at

trial in turn.

Adamson contends that the prosecution failed to establish the "physical injury" element

of assault in the second degree of James French (the Filene's Basement employee struck by the

bench).  New York Penal Law provides that, to find assault in the second degree, an individual

must have had "intent to cause physical injury to another person . . . [and] cause[d] such injury to

such person, or to a third person by means of a deadly weapon or dangerous instrument."  N.Y.

Penal Law § 120.05(2).  "Physical injury" is, in turn, defined as "impairment of physical condition or substantial pain."  *Id.* § 10.00(9).  "Substantial pain" must be "more than slight or trivial," *People v. Chiddick,* 8 N.Y.3d 445, 447 (2007), but physical impairment or substantial pain need not reach a "particular degree" or threshold.  *People v. McDowell,* 28 N.Y.2d 373, 375 (1971).[3]  The New York Court of Appeals has outlined several factors relevant to the determination of whether pain is "substantial" within the meaning of the statute: (1) whether, viewed objectively, the injury suffered "would normally be expected to bring with it more than a little pain"; (2) the victim's "subjective description of what he felt"; (3) whether the victim sought medical treatment; and (4) the defendant's motive in inflicting the harm.  *Chiddick*, 8 N.Y.3d at 447-48.  Generally, whether there was physical injury is a question for the trier of fact. *People v. Guidice*, 83 N.Y.2d 630, 636 (1994).

Here, the evidence presented at trial permits a jury finding of physical injury.  While French testified to a lack of pain and his medical records described the wound as "minor," the jury also heard testimony describing the impact of the forty-pound bench, the extensive bleeding that resulted, the staples required to close the wound, and the scar.  Based on that testimony, the jury found that there was physical injury (whether by physical impairment or substantial pain) and thus an assault.  While the second *Chiddick* factor (the victim's subjective description) cuts against a finding of physical injury, and the motive here might have been mere hostility (less indicative of physical injury per *Chiddick* under the fourth factor), the jury could still find physical injury based on the other factors listed above, as well as French's visit to the emergency

---

[3]     The legislature "did not intend a wholly subjective criterion to govern" assessment of pain.  *Matter of Philip A.*, 49 N.Y.2d 198, 200 (1980).  In defining physical injury, the drafters of § 10.00(9) noted that it would not stem from "petty slaps, shoves, kicks, and the like."  *Id.*  (quoting Temporary Commission on Revision of the Penal Law and Criminal Code, Proposed Penal Law, at 330).

room.  Under the AEDPA, such a determination of a factual issue made by a state court is

presumed correct; and Adamson has not rebutted that presumption by clear and convincing

evidence, instead merely pointing to French's testimony and medical records (which the jury

reviewed here).

Adamson also argues that his convictions on the counts of petit larceny and possession of

stolen property were not supported by evidence.  Petit larceny is defined as "steal[ing] property."

N.Y. Penal Law § 155.25.  Someone steals property within the meaning of the statute when,

"with intent to deprive another of property or to appropriate the same to himself or herself or to a

third person, he wrongfully takes, obtains, or withholds such property from an owner thereof."

New York Penal Law § 155.05(1).  Possession of stolen property in the fifth degree is defined as

"knowingly possess[ing] stolen property, with intent to benefit . . . a person other than an owner

thereof or to impede the recovery by an owner thereof."  New York Penal Law § 165.40.

The jury here heard testimony relevant to both counts that described the taking of the

perfume bottles, Adamson's departure without payment, and the subsequent recovery of the

bottles from Adamson; the jury also viewed corroborating surveillance video.  (TT at 32-35, 45-

46, 87-88, 113.)  Given the evidence, this Court is not persuaded that "it is more likely than not

that no reasonable juror would have convicted" on the counts of assault in the second degree,

petit larceny, and possession of stolen property in the fifth degree.  *Schlup v. Delo,* 513 U.S. 298,

329 (1995); *see also Ricco v. Burge,* No. 06-CIV-4902, 2009 WL 4341521, at *10 (S.D.N.Y.

Dec. 2, 2009) (denying habeas relief on assault charge where physical injury was established

because victim was hit in the head, her knees were scraped and bleeding, and her fingernails

were torn and bleeding); *Gutierrez v. Ricks,* No. 02-CIV-3780, 2002 WL 31360417, at *8

(S.D.N.Y. Oct. 21, 2002) (denying habeas relief on assault charge where physical injury was

established because victim was cut on face and back, leaving him scarred); *People v. Olivo,* 52

15

N.Y.2d 309, 313, 319-20 (1981) (finding sufficient evidence for petit larceny conviction where store security guard observed defendant conceal set of wrenches and pass cash registers without stopping to pay).

Accordingly, Adamson's insufficiency-of-evidence claims for habeas relief are denied.

### D.   *Brady* and *Rosario* Issues

Adamson claims that the prosecution violated its *Brady* and *Rosario* obligations by producing neither (1) Adamson's arrest photograph showing injuries to his face until after trial nor (2) French's medical records until after French's trial testimony had concluded.  *See Brady v. Maryland*, 373 U.S. 83 (1963); *People v. Rosario*, 9 N.Y.2d 286 (1961) (requiring prosecution to disclose witness's prior testimony, statements, and notes); N.Y. C.P.L. § 240.45.

Adamson's *Rosario* claim is unavailing because *Rosario* is based wholly on New York state law and does not present a federal question.  *United States ex rel. Butler v. Schubin,* 376 F. Supp. 1241, 1247 (S.D.N.Y. 1974), *aff'd,* 508 F.2d 837 (2d Cir. 1975).  *Rosario* claims are thus "not subject to review under a writ of habeas corpus."  *Ragland v. Graham*, No. 09-CV-9639, 2015 WL 545541, at *5 (S.D.N.Y. Feb. 10, 2015).

Turning to Adamson's *Brady* arguments, the Court looks for three factors: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued."  *Strickler v. Greene,* 527 U.S. 263, 281-82 (1999).  A court may find prejudice if there is a "reasonable probability" that, had the evidence been disclosed to the defense, the verdict would have been different.  *Id.* at 281.

Prejudice cannot be demonstrated here as regards the arrest photo.  While the arrest photograph could arguably have been used to impeach the testimony of Filene's Basement employee Fei that she did not think Adamson had been injured and did not recall his bleeding

(TT at 126-27), the photograph is also consistent with the testimony of Filene's Basement employees that there was a "melee" between Adamson and multiple store employees, that it took multiple people around ten minutes to subdue the defendant, and that Adamson ended up bleeding and with head injuries.  (*Id.* at 40, 58, 84-85, 93, 108, 116, 124, 138-39, 143, 149, 168, 172).  Given that the photo apparently accords with testimony at trial, its admission would not have created a reasonable probability that Adamson's verdict would have been different.  Without such prejudice, there can be no *Brady* violation.

As for French's medical records (SR at 161-67), as noted in the New York Supreme Court decision denying Adamson's § 330.30 post-verdict motion, the People affirmed that the medical records were, in fact, turned over prior to trial, and the record suggests that the medical records were turned over in timely fashion.  (SR at 10.)  Defense counsel made no comment during trial about this alleged non-disclosure and did not make any objections when the records were entered into evidence just after French's testimony.  (TT at 199.)  The People's opening at trial, in fact, mentioned French's medical records.  (*Id.* at 24.)  If such records truly had not been produced prior to trial, presumably their mention during opening statements would have triggered defense counsel to raise the issue on the record at that time.  The record thus suggests the medical records were produced in a timely fashion.

However, even if the medical records were not produced in a timely manner, the *Brady* claim would still fail because Adamson has not demonstrated any resulting prejudice.  The underlying medical records did not tend to impeach French's testimony.  Instead, they support French's statements that he suffered a minor laceration requiring staples, and that he did not report accompanying pain.  (SR at 161-67, TT at 89.)  Further, the medical records were in evidence at trial and were provided to the jury upon its request during its deliberations; the medical records were therefore available to be considered in due course as part of the jury's

verdict determination.  (TT at 258.)  Because the records were available and apparently

considered in the verdict determination (and, in any event, were not contradictory to French's

testimony), Adamson has failed to demonstrate any prejudice with regard to the timing of the

disclosure of the records.  The Court concludes therefore that there was no *Brady* violation.

### E.     Confrontation

Adamson claims his right to confrontation was violated by store detective Gauntlet

Williams's failure to testify at trial.  Adamson's claim arises from a statement elicited by defense

counsel during cross examination of Michael Paul, another store detective, that Williams

"communicate[d]" to Paul that he had checked the bathroom after Adamson departed and "that

the fragrances wasn't [sic] [there]."  (TT at 48-49.)  In *Giles v. California*, 554 U.S. 353 (2008),

Justice Scalia, writing for a plurality of four justices, noted that  "the confrontation guarantee

limits the evidence a State may introduce without limiting the evidence a defendant may

introduce," and characterized the dissent as agreeing with the plurality on this particular point.

*Id.* at 376, n. 7 (Scalia, J., concurring).  Williams's comment at issue here was introduced by

defense counsel, not the state, during cross-examination.  Therefore, under the *Giles* plurality

rationale, no violation of the Confrontation Clause is possible here.

However, even if the Confrontation Clause applies to evidence introduced by defense

counsel, Adamson's claim here fails because Williams's comment—as recounted by Michael

Paul—is not covered by the Confrontation Clause.

The Confrontation Clause generally prohibits the introduction of "testimonial" statements

from a witness who does not appear at trial, unless the witness is unavailable to testify at trial,

and the defendant has had a prior opportunity for cross-examination.  *Crawford v. Washington*,

541 U.S. 36, 54 (2004).  Statements are nontestimonial when they are made "under

circumstances objectively indicating that the primary purpose" of the communication was to

"enable" response to an ongoing emergency.  *Ohio v. Clark*, 135 S. Ct. 2173, 2179, 2182 (2015)

(holding that teachers testifying as to comments made by a student regarding ongoing abuse was

non-testimonial).  Statements are testimonial, on the other hand, "when the circumstances

objectively indicate that there is no such ongoing emergency, and that the primary purpose of the

interrogation is to establish or prove past events potentially relevant to later criminal

prosecution."  *Id.* at 2180.  In addition to the existence of an emergency, courts also consider the

informality of the situation and interrogation.  *Id.*  (A station-house interrogation is more likely

to provoke testimonial statements; less formal questioning is less likely to reflect a primary

purpose of obtaining testimonial evidence. *Id.*)  "In the end, the question is whether, in light of

all the circumstances, viewed objectively, the 'primary purpose' of the conversation was to

'creat[e] an out-of-court substitute for trial testimony.'"  *Id.*  (quoting *Michigan v. Bryant*, 562

U.S. 344, 358 (2011)).

The circumstances of the conversation between Paul and Williams indicate that its

primary purpose was to enable a response to an ongoing emergency— not to create an out-of-

court substitute for trial testimony. Williams's comment that he "didn't see the fragrances in the

bathroom" (TT at 49) was a spontaneous remark in the context of an ongoing, urgent effort to

determine whether Adamson had shoplifted the perfume.  There is a lack of formality in the

exchange, further suggesting that this conversation was not made with the primary purpose of

creating a substitute for trial testimony.  The statement at issue was an off-the-cuff comment to

another store employee, unrecorded and unmemorialized.  Williams's comment, as recounted by

Paul, was therefore nontestimonial, and raises no Confrontation Clause violation.

### F.   Ineffective Assistance of Counsel

Finally, Adamson argues that his trial counsel was constitutionally ineffective, on the

basis that he did not timely object to (1) "the misconduct of the prosecution" (presumably the

alleged *Brady* and *Rosario* violations) or (2) the trial court's inquiry about whether the jury had reached a partial verdict.  Adamson claims that defense counsel did not conduct any type of investigation or call witnesses, and further that defense counsel committed extortion by refusing to call Adamson to testify unless Adamson's family paid him first.

Pursuant to *Strickland v. Washington*, 466 U.S. 668 (1984), in order to prevail on a claim of ineffective assistance of counsel, a petitioner "must (1) demonstrate that his counsel's performance fell below an objective standard of reasonableness in light of prevailing professional norms; and (2) affirmatively prove prejudice arising from counsel's allegedly deficient representation."  *Cornell v. Kirkpatrick*, 665 F.3d 369, 375 (2d Cir. 2011).  As to *Strickland*'s first prong, courts "strongly presume[ ] [that counsel] rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (quoting *Strickland*, 466 U.S. at 690).  As to the prejudice prong, a defendant must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.  On habeas review, "the question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable—a substantially higher threshold . . . [and a] doubly deferential review."  *Knowles v. Mirzayance*, 556 U.S. 111 (2009) (citations omitted) (quotation marks omitted).

Even if this ineffective assistance claim were eligible for *de novo* review, it would still fail.  The Court does not conclude that trial counsel's performance fell below an objective standard of reasonableness here, but even if it did, Adamson cannot demonstrate prejudice with regard to his trial counsel's actions involving the medical records, arrest photograph, partial verdict inquiry, and investigation.  Trial counsel did not object to the alleged late production of

French's medical records and Adamson's arrest photograph, but, as discussed above, Adamson has not affirmatively proved prejudice arising from the late production of these documents, and so cannot prove prejudice arising from the failure to object to their late production.  Further, as detailed above, the trial judge was within his discretion to inquire whether the jury had reached a verdict on any counts; there is no indication that an objection would have prompted the trial court to withdraw its lawful inquiry into a partial verdict or changed the outcome of trial; Adamson has put forward no specific argument otherwise.  Adamson has likewise failed to demonstrate that further investigation would have created a reasonable probability of a different trial outcome.  In his brief to the Appellate Division, Adamson's only specific contentions regarding further investigation are that such investigation would have resulted in earlier disclosure of French's medical records, Adamson's arrest photo, and crime scene photographs. (Dkt. No. 1-1 at 39-43.)  Again, as discussed above, Adamson has not affirmatively proved prejudice arising from the late production of the arrest photo and medical records.  As for the crime scene photographs, Adamson does not suggest how these would have altered the outcome of the trial, let alone been exculpatory.  Without a showing of prejudice, Adamson's claim of ineffective assistance of counsel must fail as regards the medical records, arrest photograph, partial verdict inquiry, and investigation.

As to Adamson's claim that trial counsel's decision to not call witnesses constituted ineffective assistance, "[t]he decision whether to call any witnesses on behalf of the defendant, and if so which witnesses to call, is a tactical decision of the sort engaged in by defense attorneys in almost every trial," and if reasonably made, cannot support a claim of ineffective assistance of counsel.  *United States v. Eisen,* 974 F.2d 246, 265 (2d Cir. 1992) (citations omitted) (quotation marks omitted).  *See also Pitre v. United States,* 834 F. Supp. 128, 131 (S.D.N.Y. 1993) ("[T]rial counsel's decision to call particular witnesses or to pursue various defense strategies is precisely

the type of tactical decision which is within the professional and 'virtually unchallengeable' province of trial counsel.")  As Adamson's brief in his earlier § 330.30 motion explained, the decision not to have Adamson testify was a strategic choice.  (SR at 176-78.)  Adamson fails to demonstrate that not calling witnesses in this case fell below an objective standard of reasonableness in light of prevailing professional norms, thus failing *Strickland*'s first prong. Adamson also fails to show, or even attempt to show, how his testimony, or indeed, any other possible defense witness testimony, would have created a reasonable probability of a different trial outcome, thus also failing the second *Strickland* prong.

The Court concludes that the final basis for Adamson's ineffective assistance of counsel claim—that trial counsel refused to permit him to testify without receiving additional payment— is without merit.  Adamson's allegation is not only contradicted by the affidavit of trial counsel, but by Adamson's own post-verdict § 330.30 motion (by newly appointed counsel), which extensively discussed the decision not to testify as a strategic choice.  (SR at 137-39, 176-78.)

Adamson's ineffective assistance of counsel claim therefore fails.

## III.   Conclusion

For the foregoing reasons, the Petition is DENIED.  Because Petitioner Alty Adamson has failed to make a substantial showing that he was denied a constitutional right, a certificate of appealability shall not issue. 28 U.S.C. § 2253(c).

The Clerk of Court is directed to close this case.

SO ORDERED.

Dated: November 16, 2016
        New York, New York

_____
                J. PAUL OETKEN
            United States District Judge